(140 App. Div. 282.)
                    BEDFORD v. HOL-TAN CO.

(Supreme Court, Appellate Division, First Department.   October 21, 1910.)

1. REFERENCE (§ 103*)—OPINION AND DECISION—EVIDENCE—SUFFICIENCY.
     Evidence *held* to show that a deceased referee signed his opinion and
     decision with knowledge of their contents, and that his mental capacity
     was not impaired by existing illness.
     [Ed. Note.—For other cases, see Reference, Dec. Dig. § 103.*]

2. REFERENCE (§ 103*)—REFEREE'S DECISION—PREPARATION BY PARTY'S ATTOR-
   NEY—VALIDITY.
     That a referee's decision was prepared by the successful party's attor-
     ney is not ground for setting it aside, where it follows the referee's opin-
     ion, with the preparation of which the attorney had nothing to do.
     [Ed. Note.—For other cases, see Reference, Dec. Dig. § 103.*]

3. REFERENCE (§ 103*)—REFEREE'S OPINION—PREPARATION BY ANOTHER—EF-
   FECT.
     That a referee's opinion was prepared by a lawyer friend, during the
     referee's illness, does not vitiate it, where the latter knew the referee's
     views, and the referee read and discussed the opinion before signing it.
     [Ed. Note.—For other cases, see Reference, Dec. Dig. § 103.*]

4. REFERENCE (§ 99*)—REFEREE'S DECISION—EFFECT.
     Under Code Civ. Proc. § 1228, a referee appointed to hear and deter-
     mine has the same power and authority as a justice of the court, and his
     decision stands as the decision of the court, as affecting proceedings to
     review or vacate it.
     [Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 148–156; Dec.
     Dig. § 99.*]

5. REFERENCE (§ 103*)—REFEREE'S DECISION—VACATION—PROCEDURE.
     Except on motion made on a case and exceptions, a referee's decision
     can be set aside only for irregularity or surprise (Code Civ. Proc. § 998),
     or for fraud or newly discovered evidence.
     [Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 188–203; Dec.
     Dig. § 103.*]

6. REFERENCE (§ 103*)—VACATING DECISION—GROUNDS.
     That a referee did not give sufficient consideration to a case is no
     ground for summarily vacating his decision.
     [Ed. Note.—For other cases, see Reference, Dec. Dig. § 103.*]

7. REFERENCE (§ 103*)—DECISIONS—REVIEW.
     The correctness of a referee's decision is not reviewable on motion to
     vacate it.
     [Ed. Note.—For other cases, see Reference, Cent. Dig. § 193; Dec. Dig.
     § 103.*]

   Appeal from Special Term, New York County.
   Action by Edward T. Bedford against the Hol-tan Company.   From
an order setting aside the referee's report, plaintiff appeals.   Reversed,
and motion to set aside denied.
   Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,
McLAUGHLIN, and SCOTT, JJ.
   Charles Thaddeus Terry, for appellant.
   Paul Bonynge, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SCOTT, J. The plaintiff appeals from an order setting aside the decision of a referee heretofore appointed to hear and determine the action, and adjudging the proceedings before the referee a mistrial, and vacating the order of reference, and restoring the cause to the Trial Term calendar. The grounds for the order are not stated in the order itself, or in the order to show cause upon the motion which was brought before the court. The defendant's attorney, however, set forth in an affidavit certain matters which, as he considered, justified his motion; and the court, upon consideration of that affidavit and those submitted in opposition, granted the motion, in a memorandum in which it is stated as the opinion of the court that the referee, owing to his severe illness, had been unable to give the case such attention as litigants have a right to expect.

There is no substantial dispute as to the facts. The action is for damages for breach of warranty upon the sale of an automobile. The cause being at issue and having come on for trial at the Trial Term, the parties stipulated that it should be referred to a referee, to be named by the court, to hear and determine. The court thereupon appointed as referee Frederick S. Wait, Esq., a well-known member of the bar. The trial before the referee began on May 6, 1909, and continued to January 20, 1910, when the parties appeared before the referee to sum up. On the following day, in consequence apparently of some point made by the defendant, the plaintiff moved for leave to amend his complaint to conform to the proofs. This motion, by consent of the parties, was held under advisement by the referee until March 23, 1910, when it was granted; opportunity being afforded to the parties to offer further evidence, which, however, neither party appears to have done. The defendant's attorney prepared a draft of minutes covering the application to amend, the referee's ruling thereon, and the defendant's objections and exceptions. This draft, having been approved by the plaintiff's attorney and the referee, was attached to and made a part of the minutes of the trial. The referee was in failing health when the trial of the action was concluded, although he was able then, and for some months afterward, to attend at his office and transact business. It appears from his diary and register that he consumed parts of 28 days in the examination and study of the case. During the hearings, and thereafter while the case was under advisement, he frequently discussed the case with a Mr. Kimber, a member of the bar who had for many years occupied offices with him. In May, 1910, the referee's illness so far increased that he began to be confined to his house. At his request Mr. Kimber drafted from the minutes, pleadings, and exhibits, as well as the referee's memoranda and notes, an opinion which expressed the determination of the referee as theretofore expressed by him to said Kimber. This opinion Mr. Kimber read over to and discussed with the referee, who signed it on June 3, 1910. The plaintiff's attorney, having been apprised of the determination at which the referee had arrived, prepared a formal decision, which he delivered to Mr. Goodrich, a member of the bar and the managing clerk for the referee. Mr. Goodrich took the proposed decision to the referee's house and read it over to him, at the same time calling his attention to an amendment of his opinion which had been

interlined by the plaintiff's attorney. This interlineation was entirely unimportant, consisting of an amendment of the statement of the plaintiff's claim to conform it to the amendment of the complaint hereinbefore referred to. The referee approved of this amendment of his opinion, and also of the proposed decision, which in all respects conformed to the opinion. At this time his physical weakness had greatly increased, so that he found himself unable to sign his name without assistance. He was accordingly assisted by Mr. Goodrich, who guided or steadied his hand. The opinion and report was filed on June 18, 1910, and on June 23, 1910, the motion was made which has resulted in the order appealed from. The referee died somewhat suddenly on June 30, 1910.

The defendant's contentions, upon which he applied for the order, were that the referee did not sign his opinion and report, or that, if he did, he was in such a state of physical and mental weakness and incapacity as to invalidate his decision. That the referee did in fact sign both his opinion and his decision is established by uncontroverted evidence, which we find no reason to question. Nor can we see any ground for doubting that he knew the contents of both of those papers, and signed them in the light of such knowledge. That the final decision was prepared by the plaintiff's attorney is of no significance, for decisions both of judges and referees are very commonly so prepared after the judge or referee has announced the determination at which he has arrived. In the present case the decision follows the opinion signed by the referee, with the preparation of which the plaintiff's attorney had nothing to do. That the referee intrusted to Mr. Kimber the act of physically drafting his opinion is also without significance. It appears, not only that Mr. Kimber was in a position to know what the referee's views were, but also that he read over the opinion to the referee and discussed it with him before it was signed. So far as concerns the referee's mental capacity, there is no evidence whatever that it was impaired. On the contrary, the testimony of those nearest to him, and who can have no possible interest in this controversy, is that his mental faculties remained unimpaired. That they should have so remained is entirely within every one's experience, for nothing is more common than to see a man who retains unclouded mental faculties in spite of increasing physical weakness. That the referee had carefully considered the case and in all probability arrived at a conclusion thereon before his illness became so acute as to require him to remain in his house is indicated by his register entries, which ended on April 22, 1910. The defendant's attorney himself seems to have had no idea up to that date, or even so late as June 13, 1910, that the referee's mental faculties were impaired, although he knew that the referee had been a very ill man during practically all the time that the reference had been pending. If he had entertained any such idea, he had ample reason and opportunity to have terminated the reference. Instead of doing so, he signed, on June 13, 1910, a consent extending the referee's time to file his report by five days. He complains that he was afforded no opportunity to present requests to find; but the very fact that he was requested to extend the time to report was of

itself an intimation that the referee intended to make a report in five days.

A referee appointed to hear and determine has the same power and authority as a justice of the court, and his decision stands as the decision of the court. Code Civ. Proc. § 1228. His decision can be reviewed and set aside only for the same reason and in the same manner as can a decision of the court. Except upon a motion made upon a case and exceptions, such a decision can be set aside only for irregularity or surprise (Code Civ. Proc. § 998), or in case of fraud, or upon the ground of newly discovered evidence (Ladd v. Stevenson, 112 N. Y. 325, 19 N. E. 842, 8 Am. St. Rep. 748); and I do not doubt that the insanity of a referee would constitute a sufficient ground. There is no suspicion in the present case that the referee was insane, and no evidence that his mind was impaired. All the evidence is to the contrary. There is certainly no ground for imputing fraud to him, and, as we read the affidavits, no proof of such irregularity as would constitute a legal reason for setting aside his decision. The fact, if it were a fact, that the referee did not give to the case sufficient consideration, is not a ground for summarily setting aside his decision. It appears, however, that he did give it very considerable consideration, and we are satisfied that his decision as filed represented his deliberate conclusion, based upon such consideration. Whether he was right or wrong cannot be determined upon a motion like the present.

We are not unmindful of the cases in which referee's reports have been set aside by reason of indiscreet acts on the part of a referee. In some of them the court has expressly disclaimed its belief that the referee had been unfair or partial; but in each of them the circumstances were such that the referee had laid himself open to a suspicion that he might not have been wholly impartial, or had furnished reasonable grounds to the defeated party to feel that he stood at a disadvantage upon the trial. Nothing of this kind is shown, or even suggested, in the present case. Our conclusion is that no legal or justifiable ground was shown for setting aside the report of the referee, and the order appealed from must therefore be reversed.

This disposition of the plaintiff's appeal renders it unnecessary to consider the defendant's appeal.

Order reversed, without costs to either party, and motion denied. All concur.